# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Danny R. Pennebaker,

        Petitioner,        Case No. 17-12196

v.

                              Hon. Judith E. Levy

Randee Rewerts,[1] Warden,    United States District Judge

        Respondent.       Mag. J. David R. Grand

_____/

## OPINION AND ORDER DISMISSING THE PETITION FOR A WRIT OF HABEAS CORPUS [1], DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Petitioner Danny R. Pennebaker, a prisoner currently held at the Carson City Correctional Facility, in Carson City, Michigan, challenges his convictions for felonious assault and assault with intent to rob while armed. He seeks habeas corpus relief on the ground that his trial counsel was constitutionally ineffective for conceding guilt on the felonious assault charges, after Petitioner had asserted his innocence.

---

[1] The proper respondent for a state prisoner seeking habeas relief pursuant to 28 U.S.C. § 2254 is the state officer having custody of the petitioner. *See* Rule 2(a) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254. The Court orders the case caption amended to reflect the name of the warden of Carson City Correctional Facility, Randee Rewerts.

Because the Michigan Court of Appeals' decision denying this claim was not contrary to nor an unreasonable application of Supreme Court precedent, the petition for habeas corpus is denied. The Court also denies a certificate of appealability and leave to proceed *in forma pauperis* on appeal.

**I. Background**

Petitioner was convicted at a jury trial in Jackson County, Michigan, of two counts of assault with intent to rob while armed (AWIRA), Mich. Comp. Laws § 750.89, and two counts of felonious assault (assault with a dangerous weapon), Mich. Comp. Laws § 750.82. Following a direct appeal by right and a remand for resentencing, he was sentenced as a fourth habitual offender to eleven to twenty years for the AWIRA convictions and six to fifteen years for the felonious assault convictions. The Michigan Court of Appeals described the circumstances of the offense as follows:

> On June 30, 2013, defendant stopped the two victims on their way to Taco Bell. Defendant asked the two victims for a cigarette and also asked them to purchase a taco for him. Thereafter, defendant rode off on his bicycle, but then he returned and told the two victims that they looked like they were "up to no good." Defendant subsequently pulled out a knife, which caused the two victims to run to the Taco Bell.

> Police arrived at the Taco Bell shortly thereafter. One of the victims had a cut on his arm. At some point, the police found defendant, and the two victims identified defendant on scene as the perpetrator.

*People v. Pennebaker*, No. 322117, 2015 WL 6439047, at *1 (Mich. Ct. App. Oct. 22, 2015) (unpublished) (per curiam).

Petitioner raised four issues in his first direct appeal: ineffective assistance of trial counsel for admitting Petitioner's guilt without his consent, jail credit error, and two arguments regarding improper scoring of two offense variables (used in sentencing guideline calculations). The state court affirmed Petitioner's convictions but remanded for resentencing over one of the offense variable errors. *Pennebaker*, 2015 WL 6439047, at *1, *3. Petitioner raised only the question of ineffective assistance in his application for leave to appeal to the Michigan Supreme Court. That court affirmed the court of appeals decision in a standard form order. *People v. Pennebaker*, 499 Mich. 916 (2016).

Following resentencing, Petitioner again appealed by right, arguing that the judge considered inaccurate information in his Presentence Investigation Report (PSIR). The court of appeals again affirmed. *People v. Pennebaker*, No. 335371, 2018 WL 521900, at *1 (Mich. Ct. App. Jan.

23, 2018). Petitioner did not seek leave to appeal that decision in the Michigan Supreme Court.

Petitioner also filed a motion for relief from judgment at the trial court, which was denied. The state court of appeals denied leave to appeal, as did the state supreme court "because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Pennebaker*, No. 349589 (Mich. Ct. App. Oct. 14, 2019) (unpublished); *lv. den.*, 937 N.W.2d 683 (Mich. 2020). The state supreme court also denied Petitioner's motion to expand the record. *Id.*

Petitioner filed this petition on June 29, 2017. As he notes in numerous pleadings (*see*, *e.g.*, ECF No. 7, PageID.62–63; ECF No. 12, PageID.98), he raises a single claim of error, that by admitting Petitioner's guilt to the felonious assault counts without obtaining his consent on the record for that admission, trial counsel was constitutionally ineffective in violation of Petitioner's Sixth Amendment rights.

## II. Legal Standard

A habeas petition brought by a prisoner in state custody is governed by the heightened standard of review set forth in the Anti-Terrorism and

4

Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. To obtain relief, habeas petitioners who raise claims previously adjudicated by state courts must "show that the relevant state-court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)).

For the purposes of habeas review, "clearly established Federal law" is based solely on Supreme Court precedent. *Lopez v. Smith*, 574 U.S. 1, 6 (2014) (per curiam) (citing 28 U.S.C. § 2254(d)(1)). "State-court decisions are measured against this Court's precedents as of 'the time the state court renders its decision.'" *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71–72, (2003)). "[C]ircuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and thus cannot provide the basis for federal habeas relief. *Parker v. Matthews*, 567 U.S. 37, 48–49 (2012).

The focus of the AEDPA standard "is not whether a federal court believes the state court's determination was incorrect but whether that

determination was unreasonable–a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted).

Ultimately, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Additionally, a state court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen*, 563 U.S. 170 at 181. A petitioner may rebut the presumption of correctness with clear and convincing evidence. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998). "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light

of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citations omitted).

### III. Analysis

Petitioner's sole claim of error is that trial counsel's defense was objectively unreasonable, because counsel conceded guilt to the felonious assault charges without obtaining consent from Petitioner on the record. Petitioner argues that his rejection of a plea offer before his July 2013 preliminary examination, which required him to plead guilty to a single count of felonious assault in exchange for dismissal of the other charges and reduced habitual offender sentence enhancement, should have made clear to his trial attorney that he sought to pursue a defense theory of innocence at trial. (*See, e.g.*, ECF No. 12, PageID.98; ECF No. 16, PageID.744–45.)

In his opening statement, trial counsel stated that, "[a]fter you've heard all the evidence I think you'll be convinced that Mr. Pennebaker is guilty of assaulting these young men with a knife, inappropriately, wrongfully[,] there is no excuse for what he did." (ECF No. 13-5, PageID.339). However, he continued, Petitioner "never intended at all to rob these young men." (*Id.* at PageID. 339; *see also id.* at 338.) Similarly,

in his closing statement, counsel concluded that Petitioner was "guilty of two counts of felonious assault, he is because that's what he did. But he didn't assault those boys intending to rob." (*Id.* at 418.) In support, defense counsel read from a letter Petitioner wrote to the victims (which was identified and described as an admission by one of the victims (*id.* at 353).). (*Id.* at 416.) In that letter, Petitioner admitted to pulling out his knife, which frightened the victims, who then ran away. (*Id.* at 417.) Counsel argued that the letter demonstrated that Petitioner was panhandling and pulled out the knife after he felt the victims laughed at him, humiliating him, but he never intended to rob them. (*Id.*)

The Michigan Court of Appeals ruled that Petitioner's ineffective assistance of counsel claim lacked merit. *Pennebaker*, 2015 WL 6439047, at *1. It found that "[i]t is clear from the record that defense counsel did not make a complete concession of guilt, but rather defense counsel conceded that defendant was guilty of the lesser charged offenses of felonious assault." *Id.* The court continued:

> Here, defendant was positively identified by both of the victims; defendant had a knife with him when police stopped him; and defendant admitted, in a letter to the victims, that he pulled a knife on both of them and both of them appeared to be scared. "When defense counsel ... recognizes and

8

candidly asserts the inevitable, he is often serving his client's interests best by bringing out the damaging information and thus lessening the impact." *People v. Wise*, 134 Mich. App 82, 98; 351 N.W.2d 255 (1984). Accordingly, defense counsel's performance was not objectively unreasonable; thus, defendant's ineffective assistance of counsel claim of error lacks merit.

*Pennebaker*, 2015 WL 6439047, at *1.

Petitioner cites Supreme Court cases *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018), and *Florida v. Nixon*, 543 U.S. 175 (2004), as well as Sixth Circuit case *Wiley v. Sowders*, 647 F.2d 642, 650 (6th Cir. 1981), in support of his argument. None establish that he is entitled to habeas relief.

First, *McCoy* was issued on May 14, 2018, two and a half years after the Michigan Court of Appeals decided this question in Petitioner's first direct appeal. A state court decision cannot be challenged under § 2254(d) based on Supreme Court decisions not yet decided at "the time the state court render[ed] its decision." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (quotations and emphasis omitted); *see also Cullen*, 563 U.S. at 182.

Furthermore, *McCoy* is distinguishable. In *McCoy*, the Supreme Court held that it was impermissible for defense counsel to concede a defendant's guilt during the guilt phase of a two-phase death penalty

9

trial, when the defendant "vociferously insisted that he did not engage in the charged acts and adamantly objected to any admission of guilt." 138 S. Ct. at 1505, 1508. The Court reasoned that while "[t]rial management is the lawyer's province," such as deciding to "what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence," a criminal defendant is entitled to the "[a]utonomy to decide that the objective of the defense is to assert innocence" and to "insist on maintaining her innocence at the guilt phase of a capital trial." *Id.* at 1508. As a result, the Sixth Amendment gives a defendant the right to insist that counsel refrain from admitting guilt over the defendant's objection, even when counsel believes that it is in the defendant's best interest to do so to avoid a harsh sentence. *Id.* at 1511–12 .

*McCoy* found this denial of autonomy to be structural error, and therefore the ineffective assistance of counsel analysis of *Strickland v. Washington*, 466 U.S. 668 (1984), did not apply. 138 S. Ct. at 1511. *McCoy* distinguished *Florida v. Nixon*, another case in which guilt was conceded by trial counsel. In the latter case, counsel was found not to be constitutionally ineffective, because "Nixon's attorney did not negate

10

Nixon's autonomy by overriding Nixon's desired defense objective." *McCoy*, 138 S. Ct. at 1509 (citing *Nixon*, 543 U.S. at 181; *see also id.* at 192). Unlike McCoy's "adamant[] object[ions]," *id.* at 1505, Nixon was "generally unresponsive," and never articulated a defense objective; nor did he approve of or protest counsel's proposed strategy. *McCoy*, 138 S. Ct. at 1509 (citing *Nixon*, 543 U.S. at 181). Nixon only complained about counsel's concession of guilt after trial. *Nixon*, 543 U.S. at 185. "McCoy, in contrast, opposed [his attorney's] assertion of his guilt at every opportunity, before and during trial, both in conference with his lawyer and in open court." *McCoy*, 138 S. Ct. at 1509.

Petitioner's circumstances correspond more closely to Nixon's failure to respond than to McCoy's vociferous insistence on innocence. That is, Petitioner argues that his attorney should have been aware of his desire to assert his innocence at trial based primarily on his rejection of a plea offer to a single count of felonious assault many months before the March 2014 trial.[2] He does not argue that he objected to this strategy with his attorney or the court before or during trial.

---

[2] Petitioner also cites in support of his argument statements he made at an October 2013 hearing purportedly asserting innocence. As with the plea rejection, those remarks preceded his trial by several months; in addition, they are not the clear

11

Petitioner demonstrated at his October 2013 pretrial hearing that he was capable of advocating for himself directly with the court, when he sought replacement of appointed counsel or the opportunity to represent himself. (ECF No. 13-3, PageID.246, 249–51.) Even if, as Petitioner alleges, his attorney never discussed trial strategy with him, he was on notice of counsel's defense theory as soon as counsel made his opening statement. Yet Petitioner failed to oppose this strategy with his attorney or before the court; nor did he clearly and consistently insist on a defense of innocence. Instead, Petitioner, like the defendant in *Nixon*, only objected to counsel's defense strategy after trial. As a result, this is not a case of structural error, as in *McCoy*, but rather, invokes *Nixon*'s analysis of ineffective assistance of counsel.

The *Nixon* Court determined that *Strickland* governed the question before it, namely, whether a defendant must consent to counsel's strategic choices. It rejected a "blanket rule demanding" consent, and instead held that "if counsel's strategy, given the evidence bearing on the

---

assertion of innocence he suggests. Specifically, Petitioner said to the trial court, "I do not claim innocence of a crime taking place. I do claim that the crimes as charged did not take place." (ECF No. 13-3, PageID.251.) Petitioner's dispute was the result of his perception the length of his knife's blade determined whether charges should have been issued. *Id.*

defendant's guilt, satisfies the *Strickland* standard, that is the end of the matter; no tenable claim of ineffective assistance would remain."[3] *Nixon*, 543 U.S. at 192.

Claims for habeas relief based on ineffective assistance of counsel are evaluated under a "doubly deferential" standard. *Abby v. Howe*, 742 F.3d 221, 226 (6th Cir. 2014) (citing *Burt v. Titlow*, 571 U.S. 12, 15 (2013)). First, under the two-pronged standard of *Strickland*, a habeas petitioner must show "that counsel's representation fell below an objective standard of reasonableness," and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (citations omitted). *Strickland* requires a "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance[,]" *Abby*, 742 F.3d at 226 (citing *Strickland*, 466

---

[3] *Nixon* does suggest that a defense strategy that includes the admission of a defendant's guilt outside its capital context might, "in a run-of-the-mine trial might present a closer question," as to whether counsel "fail[ed] to function in any meaningful sense as the Government's adversary." 543 U.S. at 190 (quoting *United States v. Cronic*, 466 U.S. 648, 666 (1984)). However, those remarks are dicta, and therefore do not represent "clearly established Federal law" for the purposes of section 2254 analysis. *See White v. Woodall*, 572 U.S. 415, 419 (2014) (citing *Howes v. Fields*, 132 S. Ct. 1181, 1187 (2012)).

13

U.S. at 689), and that "under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Bell v. Cone*, 535 U.S. 685, 698 (2002) (citing *Strickland*, 466 U.S. at 689).

AEDPA provides the second layer of deference, under which the Court may "examine only whether the state court was reasonable in its determination that counsel's performance was adequate." *Abby*, 742 F.3d at 226 (citing *Burt*, 134 S. Ct. at 18). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington*, 562 U.S. at 101.

Against *Nixon* and the doubly deferential standard AEDPA requires, the state courts were not unreasonable to find that defense counsel provided Petitioner effective assistance. Counsel's choice of strategy was a reasonable attempt to mitigate the impact of significant evidence against Petitioner, especially Petitioner's own admission in his letter that he used a knife to frighten the victims.

Further, Petitioner cannot establish that he was prejudiced by counsel's concession of guilt. His sole argument in favor of prejudice is that counsel's admission exposed him to a higher potential sentence than

14

that of the July 2013 plea offer, had he accepted it. (ECF No. 1, PageID.33.) However, the plea offer, which Petitioner rejected months before while represented by a different appointed attorney, bears no relation or relevance to his sentence after trial. Petitioner does not suggest he declined the plea offer as the result of ineffective assistance of counsel and then received a longer sentence as the result of proceeding to trial. *See Lafler v. Cooper*, 566 U.S. 156, 170 (2012). Defense counsel's admission of the felonious assaults had no direct impact on the sentence Petitioner ultimately received. And an unsuccessful trial strategy does not establish that counsel was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").

Finally, Petitioner is not entitled to habeas relief based on *Wiley v. Sowders*, a pre-AEDPA Sixth Circuit habeas case in which a petitioner's "lawyer admitted his client's guilt, without first obtaining his client's consent to this strategy." 647 F.2d 642, 650 (6th Cir. 1981). *Wiley* held that consent "must appear outside the presence of the jury on the trial record," and that the failure to obtain that consent, where the evidence

15

was circumstantial and the likelihood of conviction absent the confession unclear, was ineffective assistance of counsel. *Id.*

However, a later case distinguished *Wiley* and rejected a similar claim, where counsel "argued to the jury that petitioner was guilty only of the lesser included offense of second-degree home invasion" but did not concede guilt in "the charged offenses of armed robbery or first-degree home invasion." *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1095 (E.D. Mich. 2004). That court found trial counsel's admission of guilt, in "an attempt to win an acquittal" on the higher, charged offenses "a legitimate trial strategy." *Id.*

Most importantly, clearly established law for habeas purposes may only be determined by the holdings of the United States Supreme Court, so this Court may not apply *Wiley* to grant habeas relief to Petitioner. *Parker*, 567 U.S. at 48–49. In addition, Petitioner's circumstances correspond more to *Johnson*'s than *Wiley*'s. The evidence in Petitioner's case was much more significant than in *Wiley*, including the location of the suspect very shortly after police were called, matching the victims' descriptions (ECF No. 13-5, PageID.396); the victims' individual identifications of him (*id.* at 383); the knife found within Petitioner's

16

reach (*id.* at 390); and the letter from Petitioner to the victims admitting he pulled a knife and scared them (*id.* at 353, 416–18).

Further, although the felonious assault charges against Petitioner were not "lesser included offenses" of the assault while attempting to rob charges per se, *see People v. Walls,* 265 Mich. App. 642, 646 (2005), they were much less consequential. *Compare* Mich. Comp. Laws § 750.89 (assault with intent to rob punishable by life or any term of years), Mich. Comp. Laws § 750.82 (felonious assault is a four-year offense; fourth habitual offender enhancement raises the penalty to a maximum of fifteen years, Mich. Comp. Laws § 769.12(1)(c)). Applying *Johnson*, a defense seeking to limit convictions to lower-penalty charges was a "legitimate trial strategy." The state courts' finding that Petitioner's Sixth Amendment rights to counsel were not violated was not unreasonable. Petitioner is not entitled to habeas relief.

## IV. Certificate of Appealability and Pauper Status on Appeal

Federal Rule of Appellate Procedure 22(b)(1) provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. Rule 11(a) of the Rules Governing Section 2254

Cases requires the Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Section 2253(c)(2) is satisfied only if reasonable jurists could find either that the district court's assessment is debatable or wrong or that the issues presented deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).

For the reasons set forth above, reasonable jurists could not find this Court's assessment of Petitioner's claims to be debatable or wrong. Nor would reasonable jurists conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Millender v. Adams*, 187 F. Supp.2d 852, 880 (E.D. Mich. 2002). Consequently, Petitioner is not entitled to a certificate of appealability.

Further, an appeal from this decision would be frivolous and could not be taken in good faith. *See Coppedge v. U.S.*, 369 U.S. 438, 444 (1962). Therefore, Petitioner may not proceed *in forma pauperis* on appeal. Fed. R. App. P. 24(a)(3)(A).

**V. Conclusion**

18

For the reasons set forth above, the petition for a writ of habeas corpus (ECF No. 1) is **DISMISSED WITH PREJUDICE**; and a certificate of appealability and permission to appeal *in forma pauperis* are **DENIED**.

IT IS SO ORDERED.

Dated: July 27, 2020  s/Judith E. Levy
Ann Arbor, Michigan  JUDITH E. LEVY
  United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 27, 2020.

  s/William Barkholz
  WILLIAM BARKHOLZ
  Case Manager